IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DARROL HAYES, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-12-377 |
| | § | |
| BANK OF AMERICA, MORTGAGE | § | |
| ELECTRONIC REGISTRATION | § | |
| SYSTEMS, INC., and CORNERSTONE | § | |
| MORTGAGE COMPANY, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION**

Pending before the court[1] are Plaintiff's Motion for Summary Judgment (Doc. 19), Defendants' Motion for Summary Judgment (Doc. 26), and Plaintiff's Emergency Motion to Dismiss (Doc. 30).  The court has considered the motions, Defendants' responses to Plaintiff's motions, all other relevant filings, and the applicable law.  For the reasons set forth below, the court **DENIES** Plaintiff's motions and **GRANTS** Defendants' motion.

## I.  Case Background

Plaintiff, proceeding pro se, this filed case in state court on October 31, 2011, to avoid foreclosure on his house.[2]  Defendants removed the action to this court on February 9, 2012.[3]

---

[1]     The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure ("Rule") 73.  See Doc. 9.

[2]     See Doc. 1-3, Ex. 2 to Notice of Removal, Pl.'s Original Pet.; Doc. 12, Pl.'s Am. Compl.

[3]     See Doc. 1, Notice of Removal.

A.  **Factual History**

The dispute concerns the real estate commonly known as "1107 Imperial Lake Drive" in Harris County, Texas.[4]  On December 22, 2009, Plaintiff purchased the property from D.R. Horton-Texas, LTD, as reflected in a General Warranty Deed with Vendor's Lien.[5]  A "vendor's lien together with the superior title" to the property was created in favor of Cornerstone Mortgage Company ("Cornerstone"), which financed $129,609 of the purchase price.[6]

Plaintiff executed a promissory note ("Note") in favor of Cornerstone for the amount of the loan.[7]  Pursuant to the terms of the Note, Plaintiff was required to make monthly mortgage payments in the amount of $756.36 beginning on February 1, 2010.[8]  The Note was subsequently endorsed twice, first by Cornerstone to Defendant Bank of America, N.A., ("BANA") and then by Defendant BANA in blank.[9]  Defendant BANA is the "current owner, holder, and servicer of the Note" and possesses the original Note.[10]

-------------------------------

[4]    See Doc. 1-3, Ex. 2 to Notice of Removal, Pl.'s Original Pet.; Doc. 12, Pl.'s Am. Compl.

[5]    See Doc. 26-1, Ex. A to Defs.' Mot. for Summ. J., General Warranty Deed with Vendor's Lien.

[6]    See id. p. 1.

[7]    See Doc. 26-3, Ex. B-1 to Defs.' Mot. for Summ. J., Note.

[8]    Id. p. 1.

[9]    Id. p. 3.

[10]    Doc. 26-2, Ex. B to Defs.' Mot. for Summ. J., Aff. of Natalia A. Canaveral ("Canaveral"), ¶ 4.

Plaintiff also executed a deed of trust ("Deed"), which conveyed the property to a trustee for the benefit of Defendant Mortgage Electronic Registration Systems ("MERS") as nominee for Cornerstone.[11]   MERS assigned the Deed to Defendant BANA.[12]   The General Warranty Deed with Vendor's Lien, the Deed, and the Assignment of Deed of Trust were recorded in the real property records for Harris County, Texas.[13]

Plaintiff failed to make the payment due on May 1, 2010, or any payment thereafter.[14]   The substitute trustee conducted a foreclosure sale in March 2013.[15]   Defendant BANA bought the property for $167,292.[16]

**B.  Procedural History**

In his original petition, Plaintiff alleged a variety of illegal acts in the loan and foreclosure processes.[17]   Plaintiff alleged that he "discovered certain bogus Instruments which purported to divest Plaintiff of all interest in the subject

---

[11]    See Doc. 26-5, Ex. C to Defs.' Mot. for Summ. J., Deed.

[12]    See Doc. 26-6, Ex. D to Defs.' Mot. for Summ. J., Assignment of Deed.

[13]    See Doc. 26-1, Ex. A to Defs.' Mot. for Summ. J., General Warranty Deed with Vendor's Lien; Doc. 26-5, Ex. C to Defs.' Mot. for Summ. J., Deed; Doc. 26-6, Ex. D to Defs.' Mot. for Summ. J., Assignment of Deed.

[14]    Doc. 26-2, Ex. B to Defs.' Mot. for Summ. J., Aff. of Canaveral, ¶ 5 (citing Doc. 26-4, Ex. B-2 to Defs.' Mot. for Summ. J., Payment History).

[15]    See Doc. 26-7, Ex. E to Defs.' Mot. for Summ. J., Substitute Tr.'s Deed.

[16]    Id.

[17]    Doc. 1-3, Pl.'s Original Compl.

property by way of Silent Fraud."[18]

Although his petition contained convoluted statements of law and no factual details, the court broadly reads the petition to have alleged violations of the Real Estate Settlement Procedures Act[19] ("RESPA"), Regulation X,[20] the Uniform Commercial Code[21] ("UCC"), and the "REMIC LAW"[22] as well as claims of quiet title, fraudulent concealment, breach of contract,[23] and forgery.[24] Plaintiff's original petition sought fee simple title to the property, a declaration that Defendants' interests were "invalid and forever [e]xtinguished, and a return of the property "to its rightful owner[] and double its value of . . . $129,609.00 for defending the fraudulent action and void Ab initio, void from the beginning."[25] Plaintiff attached copies of several documents, among them the General Warranty Deed with Vendor's Lien, the Note, and

---

[18]   Doc. 1-3, Pl.'s Original Compl. p. 2.

[19]   12 U.S.C. §§ 2601-2617.

[20]   24 C.F.R. §§ 3500.1-3500.23.

[21]   Plaintiff cited the section allegedly violated as "UCC & 201(39)."

[22]   A REMIC is real estate mortgage investment conduit under the Internal Revenue Code.  See 26 U.S.C. § 860D.

[23]   The court understands Plaintiff's allegation that Defendants were "in violation of the Servicer Performance Agreement due to its poor bookkeeping of accounts" to state a breach of contract claim.  See Doc. 1-3, Pl.'s Original Compl. p. 4.

[24]   Id. pp. 1-6.

[25]   Id. p. 6.

two pages of the Deed.[26]

Defendants removed the case based on federal question jurisdiction and filed an answer in February 2012.[27] Plaintiff filed an amended complaint within the time allowed under the scheduling order but without seeking leave of court.[28]

As the court can best discern from the amended complaint,[29] Plaintiff's claims emanate from alleged fraud and/or irregularity in the loan documents, Defendants' alleged failure to respond to Plaintiff's request for validation of the loan, Defendants' alleged failure to record documents properly, Defendants' alleged failure to provide Plaintiff with "the alleged contract for review," Defendants' alleged poor bookkeeping, and Defendants' alleged failure to report to consumer reporting agencies the date of delinquency.[30] Plaintiff's Amended Complaint specifically listed six causes of action (in his words): 1) breach of contract; 2) violation of contract also validation; 3) violation of the servicer

---

[26]   See id., Exs. A & B to Pl.'s Original Compl., Loan Documents.

[27]   See Doc. 1, Notice of Removal; Doc. 3, Answer.

[28]   See Doc. 8, Scheduling Order; Doc. 12, Am. Compl. According to the record before the court, Plaintiff did not request the court's leave to amend or secure Defendants' written consent to amendment as required by Rule 15(a)(2). However, Defendants have not objected to the amendment. The court, therefore, deems Plaintiff's Amended Complaint to be the live pleading in this action.

[29]   Many of the statements of law in Plaintiff's complaint are incomprehensible. For example, Plaintiff claimed Defendants violated the UCC by failing to validate the alleged debt, stating that "[t]his created a Disparage Contract which for him was lawful but not legal." Doc. 12, Pl.'s Am. Compl. p. 4. Plaintiff also cited the Notice of Confidentiality Rights on the deed of trust as "a violation of fraudulent concealment." Id. p. 3.

[30]   See Doc. 12, Pl.'s Am. Compl.

performance agreement; 4) violation under the UCC; 5) failure of validation is a REMIC violation; and 6) unjust enrichment.[31] Plaintiff repeated his requests that the court find that he is the title holder of the property, that Defendants' interests be declared invalid, and that the property be returned to its rightful owner.[32]  In the amended complaint he requested monetary damages in the amount of $226,708.[33]  Plaintiff attached only the General Warranty Deed with Vendor's Lien to his amended complaint.[34]

Plaintiff filed a motion for summary judgment in February 2013, and Defendants filed their response after a brief extension.[35] Defendants sought and received leave to file a motion for summary judgment out of time.[36]  The motion docket date was July 17, 2013, and Plaintiff did not respond to the motion.[37]

---

[31]    Id. pp. 3-6.  The court notes that Plaintiff also mentioned the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667f, under the heading of unjust enrichment.  See id. p. 6.  This allegation, in its entirety, read:  "That all Defendants have violated TILA.  That validation have not been responded to because the account was not valid."  Id.  The court finds no factual allegations in the amended complaint to support a TILA claim.

[32]    See id. pp. 8-9.

[33]    Id. p. 9.

[34]    See Doc. 12, Ex. A to Pl.'s Am. Compl., General Warranty Deed with Vendor's Lien.

[35]    See Doc. 19, Pl.'s Mot. for Summ. J.; Doc. 22, Defs.' Resp. to Pl.'s Mot. for Summ. J. ("Resp.").

[36]    See Doc. 27, Mot. for Extension of Time; Doc. 28, Order Dated Aug. 9, 2013.

[37]    To date, Plaintiff still has not responded to Defendants' motion. Although the Local Rules for the Southern District of Texas state that failure to respond to a motion will be taken as a representation of no opposition, the court must consider the merits of dispositive motions regardless of whether a response was filed.  See L.R. 7.4 Watson v. United States, 285 F. App'x 140, 143

6

On August 14, 2013, Plaintiff filed a notice of appearance of counsel.[38]  The following day, Plaintiff filed an emergency motion to dismiss without prejudice, explaining that Plaintiff had filed the lawsuit "on the advice of an unlicensed individual from Michigan holding himself out as a paralegal," who promised Plaintiff the recovery of large sums of money for a fee.[39]  In the motion, Plaintiff's counsel acknowledged that Plaintiff's pleadings were "incoherent and unintelligible to read and understand" and stated that counsel advised Plaintiff "to dismiss this action to protect his future rights, should it be determined that there are claims that can be substantiated from real evidence rather than an abundance of conclusory statements."[40]

Defendants opposed Plaintiff's motion to dismiss, and the court set a hearing on the matter.[41]  On August 23, 2013, Plaintiff filed a petition for relief under Chapter 13 of the Bankruptcy Code.[42]  Five days later, which happened to be the day before the

---

(5th Cir. 2008)(citing <u>Johnson v. Pettiford</u>, 442 F.3d 917, 918 (5th Cir. 2006), and <u>Johnson v. Louisiana</u>, 757 F.2d 698, 708-09 (5th Cir. 1985)(stating that the Fifth Circuit has rejected granting dispositive motions based solely on the failure to comply with Rule 7.4).

[38]     <u>See</u> Doc. 29, Notice of Appearance.

[39]     Doc. 30, Pl.'s Emergency Mot. to Dismiss p. 1.

[40]     <u>Id.</u> pp. 1, 2.

[41]     <u>See</u> Doc. 32, Defs.' Resp. to Pl.'s Emergency Mot. to Dismiss; Doc. 33, Notice of Setting.

[42]     Doc. 36, Defs.' Brief Addressing the Effect of Pl.'s Bankr. Pet. on this Litig.

scheduled hearing, Plaintiff filed a Notice of Suggestion of Bankruptcy.[43] At the hearing, the parties discussed the effect on this action of Plaintiff's filing for bankruptcy protection.[44] The court allowed Defendants one week to brief the issue and Plaintiff two weeks to respond.[45] Defendants timely filed a brief.[46] Plaintiff failed to respond to Defendants' brief or to the court's telephonic inquiries regarding his intention to file a brief.

The court begins its analysis with the preliminary matters of the effect of Plaintiff's bankruptcy petition and Plaintiff's motion to dismiss.

## II. Bankruptcy Protection

Pursuant to the Bankruptcy Code, a voluntary petition filed with the bankruptcy court operates as a stay of a variety of actions against the debtor. 11 U.S.C. § 362(a). However, the stay does not apply to lawsuits initiated by the debtor that would inure to the benefit of the estate. Carley Capital Grp. v. Firemen's Fund Ins. Co., 889 F.2d 1126, 1127 (D.C. Cir. 1989); see also 11 U.S.C. § 362(a) (listing actions against the debtor or property of the estate as those to which the automatic stay applies); In re Versoy, 306 F. App'x 65, 68-69 (5th Cir. 2009)(unpublished)(stating

---

[43]   See Doc. 34, Notice of Suggestion of Bankr.

[44]   See Oral Tr. of Hr'g on Aug. 29, 2013.

[45]   See Doc. 35, Min. Entry Dated Aug. 29, 2013.

[46]   See Doc. 36, Brief.

that 11 U.S.C. § 362 has no effect on claims initially brought by the debtor); In re U.S. Abatement Corp., 39 F.3d 563, 568 (5th Cir. 1994)(stating that the automatic stay applies only to actions against the debtor).

When a debtor files for bankruptcy protection while a claim he initiated is pending, the claim becomes a part of the bankruptcy estate. See 11 U.S.C. §§ 541(a)(1), 1306; In re SI Restructuring Inc., 714 F.3d 860, 864 (5th Cir. 2013)(defining "estate" in context of a Chapter 11 petition). A Chapter 13 debtor remains in possession of all property of the estate and has standing to bring claims in his own name on behalf of the bankruptcy estate. See 11 U.S.C. § 1306(b)(stating that the debtor retains possession of all property of the estate); Love v. Tyson Foods, Inc., 677 F.3d 258, 269 n.6 (5th Cir. 2012)(Haynes, J., dissenting)(noting that "[e]very circuit to have considered the question has held that the 'rights and powers' that the Chapter 13 debtor enjoys under [11 U.S.C.] § 1303 include the power to sue on claims that are property of the estate on behalf of the estate"); Smith v. Rockett, 522 F.3d 1080, 1081 (10th Cir. 2008)(collecting circuit court decisions that held Chapter 13 debtors have standing to bring claims in their own names for the benefit of the bankruptcy estates); Stangel v. Fetterly & Gordon, P.A., No. Civ. A. 3:00CV1509-L, 2001 WL 671466, at *6 (N.D. Tex. June 12, 2001)(quoting legislative history indicating a debtor has standing to pursue prepetition claims).

9

The present lawsuit was brought by Plaintiff against Defendants, and Defendants seek no affirmative relief. Thus, the automatic stay is not applicable to this case. Furthermore, Plaintiff has standing to pursue claims in his own name for the benefit of the bankruptcy estate. Nothing stands in the way of the court ruling on the pending dispositive motions.

### III.   Summary Judgment Motions

Both parties moved for summary judgment. Rather than addressing each party's motion separately, the court contemplates the viability of each of Plaintiff's allegations within the context of the arguments raised by both parties.

### A.   <u>Summary Judgment Standard</u>

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Brown v. City of Houston, Tex.</u>, 337 F.3d 539, 540-41 (5th Cir. 2003). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Ameristar Jet Charter, Inc. v. Signal Composites, Inc.</u>, 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. <u>Anderson</u>, 477 U.S. at

10

250; <u>TIG Ins. Co. v. Sedgwick James of Wash.</u>, 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992). If the moving party can show that the facts are not in dispute, the party opposing summary judgment must go beyond the pleadings and proffer evidence demonstrating that genuine issues of material fact do exist that must be resolved at trial. <u>See</u> <u>Celotex Corp.</u>, 477 U.S. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." <u>Evans v. City of Houston</u>, 246 F.3d 344, 348 (5th Cir. 2001); <u>see also</u> <u>Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.</u>, 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." <u>Honore v. Douglas</u>, 833 F.2d 565, 567 (5th Cir. 1987).

Even when a nonmovant fails to respond to a motion for summary judgment, the movant still bears the burden of proving that no issue of material fact exists. <u>Celotex</u>, 477 U.S. at 323. However, the court will only resolve factual controversies in favor of the

nonmoving party when a controversy actually exists; in other words, no controversy exists when factual allegations are not challenged by the nonmoving party. <u>Little</u>, 37 F.3d at 1075 (relying on <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871, 888 (1990)). Therefore, assumptions or inferences that the nonmoving party could or would prove the necessary facts will not be made. <u>Id.</u>

**B.  <u>Analysis</u>**

Plaintiff's motion argues that Defendants lack privity because Plaintiff never entered a contract with them and that they cannot prove chain of title, the existence of a valid lien, or ownership of the note.[47] Plaintiff's motion for summary judgment is subheaded as Plaintiff's affidavit.[48] Although it is not in affidavit form, it is signed and dated and, to the extent it contains competent testimony, is accepted by the court as a declaration. However, the vast majority of the declaration consists of legal conclusions and other information not within Plaintiff's personal knowledge.

His brief in support of his motion states, in its entirety:

Introduction

This Motion involves a cause of action filed by the Darrol Hayes against Bank of America et al (Defendant(s) for request of Quiet Title plus interest and costs incurred since the filing of this Complaint.

Argument

---

[47]  <u>See</u> Doc. 19, Pl.'s Mot. for Summ. J.

[48]  <u>See</u> <u>id.</u>

This is a Quiet Title Case which Defendant(s) has failed or refused to validate the alleged Account in violation of 15 U.S.C $ 1692 f (1) and Defendant also Defendant(s) counsel has failed to respond to the request for the original we ink contract if any, none as of 02/11/2013.

As a result of the foregoing, Plaintiff is entitled to Summary Judgment on all Counts of its Complaint based on Federal Rule 56(c) and entry of Judgment in its favor, to include legal fees, costs, and such other relief this Court deems appropriate.

## Conclusion

For the reasons set forth above, this Court should grant Plaintiff's Motion for Summary Judgment in favor of the Plaintiff.[49]

Attached to the brief is the only evidence, in addition to Plaintiff's declaration, that Plaintiff submitted with his motion for summary judgment.[50]  Plaintiff's declaration refers to two certified mail receipts, copies of which are attached to his brief, that indicate Defendants each received something in the mail in early November 2011.[51]  In his declaration, he claims that they are proof that he sent a request for validation to Defendants.[52]  The only other piece of summary judgment evidence submitted by Plaintiff is a court document that Plaintiff filed in January 2012 in state court, requesting that the court consider Defendants' failure to respond to his petition as a representation of no

---

[49] Doc. 20, Pl.'s Brief in Support of Mot. for Summ. J.

[50] See id.

[51] See Doc. 19, Pl.'s Mot. for Summ. J. p. 2; Doc. 20, Ex. A to Pl.'s Brief in Support of Mot. for Summ. J., Certified Mail Receipts.

[52] See Doc. 19, Pl.'s Mot. for Summ. J. p. 2.

opposition.[53]

Defendants' summary judgment motion presents nearly identical arguments to their response to Plaintiff's motion. They contend that Plaintiff's Amended Complaint fails to state the elements for any alleged cause of action and that Plaintiff failed to produce any summary judgment evidence in support of those elements. Rather, they contend, the evidence shows that a valid contract exists between Plaintiff and Defendant BANA under which Plaintiff failed to perform, allowing Defendant BANA to exercise its contractual power of sale.

The few factual allegations in the amended complaint do not match up well with the causes of action identified by Plaintiff. Although Plaintiff claims that he did not enter into a contract with Defendants,[54] three of the counts listed in the amended complaint are labeled in such a way as to assert breaches of contract. Counts 1, 2, and 3 all loosely refer to contract breaches. Even though those counts reference other violations in addition to contract breaches, the court addresses all allegations made therein under the "Breach of Contract" subheading in this opinion. Plaintiff's UCC claim seems to relate to the negotiation of the note, which Plaintiff alleged was fraudulent and/or recorded improperly. The court addresses that cause of action and then

---

[53]   See Doc. 20, Ex. B to Pl.'s Brief in Support of Mot. for Summ. J., Notice of Violation of Court Rule 3.3.2.

[54]   See Doc. 19, Pl.'s Mot. for Summ. J. p. 1.

14

turns to Plaintiff's last two claims of REMIC violation and unjust enrichment.  The court concludes with quiet title, a claim mentioned several times in Plaintiff's filings but not specifically listed as a cause of action in Plaintiff's Amended Complaint.[55]

### 1.  Breach of Contract

A breach of contract claim requires proof that: 1) a valid contract exists; 2) plaintiff fully performed his obligations; 3) defendant breached the contract; and 4) plaintiff was damaged as a result of the breach.  <u>Hovorka v. Cmty. Health Sys., Inc.</u>, 262 S.W.3d 503, 508-09 (Tex. App.--El Paso 2008, no pet.).  "Under Texas law, if one party to a contract breaches, there is no obligation for the non-breaching party to continue performance." <u>United States ex rel. Wallace v. Flintco Inc.</u>, 143 F.3d 955, 968 (5th Cir. 1998); <u>see also</u> <u>Thomas v. EMC Mortg. Corp.</u>, 499 F. App'x 337, 341 (5th Cir. 2012)(unpublished)(finding that homeowners who failed to make timely payments could not maintain a breach of contract claim against the lenders).

The court understands Plaintiff's Amended Complaint to make the following allegations under the category of breach of contract: improper bookkeeping; failure to respond to Plaintiff's request for validation;  failure  to  provide  Plaintiff  with  documents  he

---

[55]      The court does not address unclean hands, which was mentioned in Plaintiff's motion for summary judgment.  <u>See</u> Doc. 19, Pl.'s Mot. for Summ. J. p. 2 ("That no name of a real party in interest has came forward and the answer to the Interrogatory has not resolved that request which is proof of unclean hands.")  The court could not locate any allegation of unclean hands in Plaintiff's Amended Complaint.  <u>See</u> Doc. 12, Pl.'s Am. Compl.

requested; failure to report the date on which the account first became delinquent; and failure to record the lien "at the register of deeds office." In neither his amended complaint nor his motion did Plaintiff identify any valid contract[56] imposing these obligations on Defendants, state that he fully performed his obligations, or explain how he was damaged by the alleged breaches. Even if he had provided sufficient factual allegations, he could no longer rely on them at the summary judgment stage.

Defendants produced an authenticated copy of the loan history statement for Plaintiff's loan.[57] A bank employee explained that the statement indicated that Plaintiff had not made the payment due in May 2010 or any that came due thereafter.[58] The court has reviewed the statement and finds no apparent bookkeeping errors. Absent any evidence to support the allegation of improper bookkeeping, Plaintiff cannot succeed on that contract claim.

In addition to the loan history statement, Defendants submitted copies of the Note and the Deed.[59] The evidence shows

---

[56]    Plaintiff alleged violations of a servicer performance agreement in his amended complaint but never entered a copy of that contract into the record. Doc. 12, Pl.'s Am. Compl. p. 4. By the name, it does not appear to refer to any contract in evidence. Without evidence, Plaintiff's claim cannot survive summary judgment.

[57]    See Doc. 26-2, Ex. B to Defs.' Mot. for Summ. J., Aff. of Natalia Canaveral ¶ 5; Doc. 26-4, Ex. B-2 to Defs.' Mot. for Summ. J., Loan History Statement.

[58]    See Doc. 26-2, Ex. B to Defs.' Mot. for Summ. J., Aff. of Natalia Canaveral ¶ 5.

[59]    See Doc. 26-3, Ex. B-1 to Defs.' Mot. for Summ. J., Note; Doc. 26-5, Ex. C to Defs.' Mot. for Summ. J., Deed.

that Plaintiff failed to make timely payments and that nonpayment was a breach of his obligations under the Note and the Deed. Plaintiff's breach, which preceded his requests for validation and documentation and the reporting of the delinquency date, relieved Defendants of the duty to continue performing under the Note and the Deed. See United States ex rel. Wallace, 143 F.3d at 968. Therefore, Plaintiff cannot maintain breach of contract claims based on those allegations, even assuming they were contractual duties. See Thomas, 499 F. App'x at 341.

Plaintiff's final contract claim, concerning the recording of the deed, is contested by Defendants. In fact, the Deed bears the stamp of the Harris County District Clerk, indicating that it was recorded in December 2009.[60] To the extent that Plaintiff contends that the Deed should have been recorded at some other location (he refers to "the register of deeds office"), Plaintiff has failed to show that any contract in evidence imposed such an obligation on Defendants. Plaintiff cannot succeed on any breach of contract claim.

Plaintiff mentioned several other claims under the contract subheadings: fraudulent concealment; and violations of the Fair

---

[60]    See Doc. 26-5, Ex. C to Defs.' Mot. for Summ. J., Deed p. 1.

Credit Reporting Act[61] ("FCRA"), RESPA, and Regulation X.[62]   The court addresses those in the order listed here.

The elements of common law fraud are: "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." In re FirstMerit Bank, N.A., 52 S.W.3d 749, 758 (Tex. 2001).   When a party has a duty to disclose information and fails to do so, the concealment of that information may constitute fraud. Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 2001).

Plaintiff did not allege facts in his amended petition identifying what Defendants failed to disclose to Plaintiff.   The court's best guess is that the allegation related to the alleged failure to provide Plaintiff with documents upon request.   Even if true, the failure to provide documents would not support a fraud cause of action because it is neither a representation nor the omission of a representation.   Moreover, Plaintiff failed to produce any evidence whatsoever to support the allegation that he

---

[61]    See 15 U.S.C. §§ 1681–1681x.

[62]    Plaintiff also alleged a violation of "Section 600.2109-Recorded Conveyance and Instrument-Certified Copies."   Doc. 12, Pl.'s Am. Compl. p. 3. The law to which Plaintiff referred is not readily identifiable, and the court was unable to locate it in Texas or federal statutes or federal regulations.

requested documents, that Defendants had a duty to provide them to Plaintiff, or that Defendants failed to provide them.  As the evidence reveals nothing even remotely suggesting Defendants' fraudulent concealment, the claim fails.

Under the FCRA, furnishers of information have a duty to provide accurate information regarding the delinquency of accounts. See 15 U.S.C. § 1681s-2(a)(5).  "A person who furnishes information to a consumer reporting agency regarding a delinquent account being placed for collection . . . shall . . . notify the [consumer reporting] agency of the date of delinquency on the account . . . ."  Id.

In the amended complaint, Plaintiff's only reference to the FCRA stated: "That Unlawful practice of re-aging, a collection company must report the original date (actual month and year) the account first became delinquent.  This is when the clock begins ticking.  This is a violation of Section 623(a)(5) of the FCRA and NCO was required to pay a $1,5000.000.00 fine."[63]  Plaintiff did not assert that Defendants engaged in the practice of re-aging or even that Defendants did not properly report the delinquency of his mortgage loan.[64]  Plaintiff failed to properly plead a FCRA claim and, further, failed to provide any summary judgment evidence to

---

[63]    Doc. 12, Pl.'s Am. Compl. p. 4.

[64]    The allegation not only did not mention Defendants, but, according to Defendants, it referenced a fine imposed on NCO Financial in a separate, unrelated proceeding.  See Doc. 26, Defs.' Mot. for Summ. J. p. 13.  The reference has nothing to do with the facts underlying this case.

support the claim.  Defendants are entitled to summary judgment on this claim.

Under RESPA, a loan servicer has a duty to respond to borrower inquiries.  See 12 U.S.C. § 2605(e).  Upon receipt of a written request that includes the name and identifies the account of the borrower and a sufficiently detailed statement explaining the reason for a belief that the account is in error or detailing the information sought by the borrower, the servicer must acknowledge, within twenty days, receipt of that request.  12 U.S.C. § 2605(e)(1).  Within sixty days of receipt of the request, the servicer must provide the borrower with a written response that includes the information requested or an explanation of why that information is unavailable, as well as contact information for an individual who can assist the borrower.  12 U.S.C. § 2605(e)(2). A claim of failure to respond to a qualified written request requires proof of actual damages from the statutory violation.  See 12 U.S.C. § 2605(f).  Regulation X is the common name for the regulations implementing RESPA.  Moreno v. Summit Mortg. Corp., 364 F.3d 574, 576 (5th Cir. 2004).

Plaintiff averred in his declaration that he sent requests for validation to Defendants and that the copies of two certified mail receipts correspond to those requests.  Viewing the evidence favorably to Plaintiff, as the court must, the court finds that Plaintiff has adduced some evidence that he submitted written

requests to Defendants that they validate his loan.  Read very broadly, Plaintiff's declaration can be understood as also indicating that Defendants failed to provide the requested information.[65]

However, that is not sufficient evidence to meet his burden in response to Defendants' motion, much less to establish his affirmative summary judgment burden of showing that no genuine issue of fact exists and Plaintiff is entitled to judgment as a matter of law against Defendants for violating RESPA.  Plaintiff produced no evidence that his qualified written response met the RESPA requirements or that he suffered any damages as a result of any RESPA violation.  As Plaintiff failed to carry his burden, summary judgment must be granted in favor of Defendants on the RESPA claim.

## 2.  Violation of the UCC

Article 3 of the UCC covers negotiable instruments; Article 4 covers bank deposits and collections; Article 8 covers investment securities; and Article 9 covers secured transactions.  Tex. Bus. & Comm. Code § 3.102; Tex. Bus. & Comm. Code § 4.101; Tex. Bus. & Comm. Code § 8.102; Tex. Bus. & Comm. Code § 9.101.  The Texas Business and Commerce Code explains that the provisions related to

---

[65]  See Doc. 19, Pl.'s Mot. for Summ. J. p. 2. (stating "[t]hat no name of a real party in interest has came forward and the answer to the Interrogatory has not resolved that request which is proof of unclean hands" and "[t]hat finally [NO PROMISE TO LEND] has been presented to the Court as proof of any valid loan with the Plaintiff and again a Notice was given of this violation to the Court Rule 3.3.2 as of 1/20/2012").

secured transactions do not apply to "the creation or transfer of an interest in or lien on real property." Tex. Bus. & Comm. Code § 9.109(d)(11).

In the amended complaint, Plaintiff cited generally to Article 3. He also cited to Section 208 of Article 4,[66] which pertains to presentment warranties, and Section 321 of Article 8,[67] which was deleted in 1995. The court can discern no statement of a legal claim within Plaintiff's pleading related to any of those three UCC articles, and Plaintiff failed to produce any evidence of a violation. Plaintiff also cited to several sections of Article 9. As Article 9 does not apply to real property liens, Plaintiff cannot maintain any action pursuant to the provisions therein.

Within his discussion of the UCC in his amended complaint, Plaintiff cited a provision of the Fair Debt Collection Practices Act[68] ("FDCPA") that deals with the validation of a debt. In his summary judgment brief he claims a violation of another section of the FDCPA that concerns unfair collection practices.

The FDCPA was designed "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action

---

[66]     Tex. Bus. & Comm. Code § 4.208.

[67]     Tex. Bus. & Comm. Code § 8.321.

[68]     See 15 U.S.C. §§ 1692–1692o.

to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); see also McKenzie v. E.A. Uffman & Assocs., Inc., 119 F.3d 358, 360 (5th Cir. 1997). The protections of the statute extend to debts "arising out of . . . transaction[s] in which the money, property, insurance, or services which are the subject of the transaction[s] are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).

Upon initial contact with a debtor or within five days of initial contact, a debt collector must provide the amount of a debt, the name of the creditor to whom the debt is owed, a notice that the debt will be assumed to be valid unless the debtor timely disputes the debt, a statement that the debt collector will verify the debt upon timely written request and mail a copy of the verification to the debtor, and a statement that the debt collector will provide name and address of the original creditor upon written request. 15 U.S.C. § 1692g(a). When a debtor timely sends a written notification to the debt collector disputing the debt or requesting contact information for the original creditor, the debt collector must cease collection until it sends the debtor the requested information. See 15 U.S.C. § 1692g(b).

Among the tactics that the FDCPA prohibits debt collectors from using in connection with the collection of any debt are: 1) the collection of any amount that is not expressly authorized by the debt agreement; 2) the solicitation by a debt collector of a

23

postdated check; 3) charging a person for communications by concealment of true purpose of communication; 4) taking or threatening to take nonjudicial action to dispossess debtor of property in the absence of a legal right and present intention or if property is exempt; and 5) communicating with a debtor by post card.  15 U.S.C. § 1692f.

Although Plaintiff submitted some evidence that he requested loan validation from Defendants, that alone is insufficient to establish a claim under 15 U.S.C. § 1692g.  The alleged facts are simply too sparse to determine whether that section was triggered. The evidence does not establish that Defendants failed to timely provide Plaintiff with the required information.   No evidence suggests that Defendants engaged in any prohibited debt collection tactic.[69]  Plaintiff cannot pursue an FDCPA claim.

**3. REMIC Violation**

Under the Internal Revenue Code, the general rule is that REMICs are not taxed as corporations, partnerships, or trusts, but, rather, the income from REMICs is generally taxed to the holders of those interests.  26 U.S.C. § 860A.

In his live pleading, Plaintiff asserted that Defendants violated "the REMIC LAW."  Plaintiff discussed the provisions of

---

[69]    The court does not address whether Defendants qualify as debt collectors under the FDCPA.

the Internal Revenue Code that address the treatment of REMICs.[70]

The record contains no evidence to support this claim. More importantly, Plaintiff has not shown that he has standing to bring a private right of action for an income tax violation or that the court has jurisdiction in the first instance over such a claim. Plaintiff cannot maintain a claim for a REMIC violation.

### 4. Unjust Enrichment

Under Texas law, unjust enrichment is not considered an independent cause of action; rather, it is a theory of recovery that allows for restitution "when a party receiving property or benefits would be unjustly enriched if it were permitted to retain the property or benefits at the expense of another." Heldenfels Bros., Inc. v. City of Corpus Christi, 832 S.W.2d 39, 43 (Tex. 1992); see also Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc., 246 S.W.3d 42, 62 n.24 (Tex. 2008)(quoting Heldenfels Bros., Inc., 832 S.W.2d at 41, as stating that restitution is a recognized remedy for unjust enrichment "[w]hen one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage"). Unjust enrichment is an equitable doctrine that applies only in the absence of an actual contract. Mowbray v. Avery, 76 S.W.3d 663, 679 (Tex.

---

[70]   Plaintiff also mentioned fraudulent concealment, the violation of a servicer performance agreement, and poor bookkeeping. See Doc. 12, Pl.'s Am. Compl. p. 5. The court addressed these issues in an earlier section of this opinion and finds no connection between the allegations and the Internal Revenue Code.

App.–Corpus Christi 2002, pet. struck); see also Frank's Casing
Crew & Rental Tools, Inc., 246 S.W.3d at 51 (discussing the Supreme
Court of Texas' reluctance to allow rewriting of a contract based
on an equitable unjust-enrichment theory).

In his amended complaint, Plaintiff again mentioned
Defendants' alleged failure to validate the loan and concluded that
"Defendants received and unjust enrichment and made Plaintiff the
injured party."[71]  Plaintiff did not plead facts pointing to, much
less submit any evidence of, property or benefits that Defendants
received at Plaintiff's expense.

Here, the evidence shows that the parties entered a contract
that covered payment arrangements, rendering equitable relief
improper.  Therefore, Plaintiff cannot recover under the doctrine
of unjust enrichment.

**5.  Quiet Title**

A suit to quiet title is an equitable remedy to clarify
ownership by removing clouds on the title (competing claims to
ownership).  See Ford v. Exxon Mobil Chem. Co., 235 S.W.3d 615, 618
(Tex. 2007).  A plaintiff must prove and recover on the strength of
his own title.  Fricks v. Hancock, 45 S.W.3d 322, 327 (Tex. App.--
Corpus Christi 2001, no pet.).

Defendants produced evidence of a valid encumbrance to the
property in the form of a copy of the Deed and an authenticated

---

[71]     Doc. 12, Pl.'s Am. Compl. p.6.

copy of the Note. This is sufficient evidence to establish ownership. See Zarges v. Bevan, 652 S.W.2d 368, 369 (Tex. 1983)(finding that an authenticated photocopy of a note was sufficient as a matter of law to prove ownership absent controverting evidence); Nguyen v. Citibank N.A., ___ S.W. 3d ___, 2013 WL 3192884, at *2 (Tex. App.--Houston [14th Dist.] 2013, no pet. h.). Plaintiff failed to adduce any controverting evidence. Plaintiff's quiet title claim fails as a matter of law.

## IV. Conclusion

Based on the foregoing, the court **GRANTS** Defendants' motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment. Because Defendants' summary judgment motion is meritorious and warrants dismissal of Plaintiff's entire lawsuit with prejudice, Plaintiff's motion to dismiss without prejudice is **DENIED**.

**SIGNED** in Houston, Texas, this 23rd day of September, 2013.

Nancy K. Johnson
United States Magistrate Judge